UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE:  THE HONORABLE TIMOTHY M. REIF, JUDGE

_____
                                                      )
WIND TOWER TRADE COALITION,            )
                                                      )
                    Plaintiff,                       )
                                                      )
            v.                                        )            Court No. 20-003692
                                                      )
UNITED STATES,                               )
                                                      )
                    Defendant.                    )
_____)

### <u>ORDER</u>

Upon consideration of the Department of Commerce's remand results, plaintiff's comments, defendant's response, and all other pertinent papers, it is hereby

ORDERED that the Department of Commerce's remand results are sustained.


Dated: _____, 2022
            New York, NY                          _____
                                                                              JUDGE

IN THE UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE:  THE HONORABLE TIMOTHY M. REIF, JUDGE

_____
                                                        )
WIND TOWER TRADE COALITION,                             )
                                                        )
                        Plaintiff,                      )    Court No. 20-003692
                                                        )
            v.                                          )    **PUBLIC VERSION**
                                                        )    Business Proprietary Information
UNITED STATES,                                          )    (BPI) Denoted By Brackets [ ] On
                                                        )    Pages 5, 7, 10-11, 14, 15.
                        Defendant.                      )
                                                        )
_____

### DEFENDANT'S RESPONSE TO PLAINTIFF'S COMMENTS ON REMAND RESULTS

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

PATRICIA M. McCARTHY
Director

REGINALD T. BLADES, JR.
Assistant Director

OF COUNSEL:                          JOSHUA E. KURLAND
MYKHAYLO GRYZLOV                     Senior Trial Counsel
Senior Counsel                      Commercial Litigation Branch
Office of the Chief Counsel         Civil Division
for Trade Enforcement & Compliance  U.S. Department of Justice
U.S. Department of Commerce         P.O. Box 480, Ben Franklin Station
                                    Washington, D.C. 20044
                                    Tel.: (202) 616-0477
                                    Email: Joshua.E.Kurland@usdoj.gov

October 21, 2022                    *Attorneys for Defendant United States*

## TABLE OF CONTENTS

BACKGROUND ............................................................................................................... 1

SUMMARY OF ARGUMENT .......................................................................................... 2

STANDARD OF REVIEW ................................................................................................ 3

ARGUMENT ..................................................................................................................... 3

I.    Commerce Reasonably Found That WTTC's Allegations Of Potential Manipulation
      Are Unsupported, Regardless Of Whether Considered Individually Or Collectively ......... 3

II.   WTTC's Arguments Regarding The Import Duties Exemption Program Lack Merit ........ 9

CONCLUSION ................................................................................................................. 16

## <u>TABLE OF AUTHORITIES</u>

**Cases**                                                                 **Page(s)**

*Consol. Edison Co. v. NLRB,*
    305 U.S. 197 (1938) ................................................................................ 3

*Consolo v. Fed. Mar. Comm'n,*
    383 U.S. 607 (1966) ................................................................................ 3

*Gov't of Argentina v. United States,*
    542 F. Supp. 3d 1380 (Ct. Int'l Trade 2021) ......................................... 6

*Haixing Jingmei Chem. Prod. Sales Co. v. United States,*
    335 F. Supp. 3d 1330 (Ct. Int'l Trade 2018) ......................................... 6

*MacLean-Fogg Co. v. United States,*
    100 F. Supp. 3d 1349 (Ct. Int'l Trade 2015) ......................................... 3

*Nippon Steel Corp. v. United States,*
    458 F.3d 1345 (Fed. Cir. 2006) .............................................................. 3

*Wind Tower Trade Coal. v. United States,*
    569 F. Supp. 3d 1221 (Ct. Int'l Trade 2022) ................................... *passim*

**Regulations**

19 C.F.R § 351.525(a) ................................................................................ 6

**International Trad Administration Determinations**

*Utility Scale Wind Towers from the Socialist Republic of Vietnam,*
    85 Fed. Reg. 40,229 (Dep't of Commerce July 6, 2020) ........................ 1

IN THE UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE:  THE HONORABLE TIMOTHY M. REIF, JUDGE

| | |
|---|---|
| _____ ) | |
| WIND TOWER TRADE COALITION, ) | |
| ) | |
| Plaintiff, ) | Court No. 20-003692 |
| ) | |
| v. ) | **PUBLIC VERSION** |
| ) | Business Proprietary Information |
| UNITED STATES, ) | (BPI) Denoted By Brackets [ ] On |
| ) | Pages 5, 7, 10-11, 14, 15. |
| Defendant. ) | |
| _____ ) | |

## DEFENDANT'S RESPONSE TO PLAINTIFF'S COMMENTS ON REMAND RESULTS

Defendant, the United States, respectfully submits this response to the comments filed by plaintiff, Wind Tower Trade Coalition (WTTC), concerning the Department of Commerce's (Commerce's) remand redetermination in this matter.  Final Results of Redetermination Pursuant to Court Remand, ECF Nos. 37-1, 38-1 (July 22, 2022) (Remand Results) (R.P.R. 3; R.C.R. 3).[1] We respectfully request that the Court sustain Commerce's remand results because Commerce has complied with this Court's remand order, and because the remand results are supported by substantial evidence and otherwise lawful.  *See Wind Tower Trade Coal. v. United States*, 569 F. Supp. 3d 1221 (Ct. Int'l Trade 2022) (*WTTC*).

## BACKGROUND

This action arises from Commerce's final determination in its countervailing duty (CVD) investigation concerning utility scale wind towers from Vietnam.  *Utility Scale Wind Towers from the Socialist Republic of Vietnam*, 85 Fed. Reg. 40,229 (Dep't of Commerce July 6, 2020) (*Final Determination*), and accompanying Issues and Decision Memorandum (IDM) (P.R. 215).

_____

[1] "P.R. __" and "C.R. __" refer to public and confidential portions of the administrative record; "R.P.R. __" and "R.C.R. __" refer to public and confidential portions of the remand record.

This Court remanded two issues to Commerce for further explanation. *WTTC*, 569 F. Supp. 3d at 1259-60. The first issue involves addressing WTTC's claims regarding the possibility of manipulation arising from Commerce's selection of the denominator used in Commerce's subsidy calculations, for which the Court instructed Commerce to discuss and to address certain additional evidence that Commerce had not addressed in its final determination. *Id.* The second issue involves the alleged benefit from certain steel plate inputs under the Import Duty Exemptions program, for which the Court instructed Commerce to address evidence that detracts from its conclusions, and to further explain its subsidy calculations for the program. *Id*.

On remand, Commerce provided further explanation and analysis of the evidence and arguments that WTTC presented concerning alleged manipulation. Remand Results at 5-16, 26-35. Commerce found that "the petitioners' allegations of potential manipulation are unsupported by record evidence, regardless of whether the pieces of information are considered individually or collectively." *Id*. at 28. Regarding the Import Duty Exemption program, Commerce provided further explanation to substantiate its finding that certain steel plate inputs were sourced from within Vietnam, rather than imported. *Id.* at 16-23, 36-40. Commerce also concluded that "to receive the benefit under the program, a party has to be an importer of record, and has to have imported steel plate and paid duties on the imported plate to which the exemption might apply," whereas there is "no evidence that CS Wind Vietnam imported the steel plate at issue and paid import duties on it." *Id.* at 38-39. Rather, "the record evidence demonstrates that CS Wind Vietnam's affiliate purchased the plate in Vietnam from an unaffiliated party." *Id*. at 39.

## SUMMARY OF ARGUMENT

Commerce's remand results comply with the Court's order, are supported by substantial evidence, and are otherwise lawful. Commerce reviewed the evidence that WTTC offered in

support of its allegations of potential manipulation and reasonably found WTTC's allegations unsupported.  Likewise, regarding the Import Duty Exemption program, Commerce reasonably explained why it found that CS Wind Vietnam did not receive import duty exemptions on certain purchases of steel plate inputs.  WTTC's arguments run contrary to this Court's remand order and provide no basis for reversal.  Commerce's remand results should thus be sustained.

## STANDARD OF REVIEW

In remand proceedings, the Court will sustain Commerce's determinations if they are "in accordance with the remand order, are supported by substantial evidence, and are otherwise in accordance with law." *MacLean-Fogg Co. v. United States*, 100 F. Supp. 3d 1349, 1355 (Ct. Int'l Trade 2015) (citing 19 U.S.C. § 1516a(b)(1)(B)(i)).  "Substantial evidence" connotes "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938).  Substantial evidence may be "less than the weight of the evidence" and "the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence." *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966) (citations omitted).  Thus, a party challenging a determination under the substantial evidence standard "has chosen a course with a high barrier to reversal." *Nippon Steel Corp. v. United States*, 458 F.3d 1345, 1352 (Fed. Cir. 2006) (citation omitted).

## ARGUMENT

**I.    Commerce Reasonably Found That WTTC's Allegations Of Potential Manipulation Are Unsupported, Regardless Of Whether Considered Individually Or Collectively**

WTTC makes two arguments with respect to Commerce's finding that WTTC's manipulation allegations are unsupported by record evidence.  First, WTTC contends that "Commerce's use of {CS Wind Corporation's (CS Wind Korea's)} sales revenues in the

denominator was inconsistent with its regulations and past practice." WTTC Br. 3. Second, WTTC contends that Commerce evaluates the evidence with respect to the four factors alleged by WTTC individually, but "fails to recognize how this evidence, as a whole, demonstrates the potential for CS Wind to game U.S. AD/CVD law and its interest in doing so." *Id*. at 3-4.

This Court has already rejected WTTC's contention that Commerce's use of CS Wind Korea's sales revenues in the denominator is inconsistent with Commerce's regulations and practice. *See WTTC*, 569 F. Supp. 3d at 1232 ("Commerce's choice of denominator for the benefit calculation is not inconsistent with its regulations or with the prior determinations presented by the parties"). Accordingly, WTTC's argument in this regard lacks merit.

Further, WTTC's contention that Commerce failed to consider the evidence "as a whole" is contrary to the record. On remand, Commerce provided a detailed, 20-page analysis of the record evidence with respect to all four factors in WTTC's manipulation allegations, specifically referencing the relevant documents on the record and explaining why the evidence is insufficient to constitute potential manipulation. *See* Remand Results at 5-16, 26-35. Contrary to WTTC's assertion that Commerce did not consider its allegations collectively, Commerce *expressly* found that "the petitioners' allegations of potential manipulation are unsupported by record evidence, *regardless of whether the pieces of information are considered individually or collectively*." *Id*. at 28 (emphasis added). Commerce also stated that it is "not persuaded by petitioners' argument that the facts, which did not support their allegations of manipulation, when viewed individually, support the opposite conclusion, when considered collectively." *Id*. (citation omitted).

Thus, Commerce lawfully found that "when considered individually or collectively, the petitioners' evidence of potential manipulation amounts to multiple unsubstantiated claims, none of which have the potential to affect the denominator we used to calculate the countervailable

subsidy rate, {consisting of} CS Wind Korea's sales value of subject merchandise produced by CS Wind Vietnam." *Id.*

The record further demonstrates that Commerce addressed each of the four factors that WTTC alleged as evidence of manipulation. *See* Remand Results at 5-16, 26-35.  With respect to WTTC's allegation that CS Wind Korea and CS Wind Vietnam "suddenly" adopted the tolling arrangements to avoid payment of countervailing duties, for example, Commerce concluded that "{r}ecord evidence demonstrates that CS Wind Korea and CS Wind Vietnam entered into tolling agreements during the period of investigation (POI), but that similar toll processing agreements also existed between CS Wind Vietnam and CS Wind Korea long before the POI (2018), in the years [                    ]." *Id.* at 7 (citing Verification Report at Ex. VE-13 (Mar. 18, 2020) (P.R. 185; C.R. 103)).  Accordingly, Commerce reasonably found that "the record evidence does not support the petitioners' contentions that the tolling arrangements were adopted to 'game the system' in anticipation of this investigation, because CS Wind Vietnam and its parent had similar tolling agreements long before the POI." *Id*.

Additionally, Commerce explained that "the toll processing agreements in effect during the POI were not unusual in their terms regarding which party was responsible for providing raw materials," and that the "tolling agreements in effect during the POI have substantially similar terms with the toll processing agreements on the record from prior years." *Id*. (citation omitted).

Commerce thus found that (a) "CS Wind Vietnam had a history of tolling agreements with CS Wind Korea that long predate the POI"; (b) "CS Wind Vietnam and CS Wind Korea had historically entered into tolling agreements that governed various aspects of their commercial relationship, including purchases of raw materials"; (c) "{t}olling arrangements are common business practices that do not inherently evince efforts to manipulate the value of a company's

sales, whether to an affiliate or to an unaffiliated party"; and (d) "{a} company could adopt a more efficient business arrangement, including tolling, that reduces its costs." *Id*. at 8; *see also* Verification Report at 6, 9, Ex. VE-13 (P.R. 185-86; C.R. 103, 105); CS Wind First Supp. Questionnaire Response at 1, 3 (Nov. 6, 2019) (Nov. 6 SQR) (P.R. 122-28; C.R. 76-82).

Accordingly, Commerce reasonably found the evidence regarding tolling arrangements insufficient to demonstrate manipulation by CS Wind. *Id*. WTTC's disagreement with how Commerce weighted this evidence does not provide a basis for remand. *See Haixing Jingmei Chem. Prod. Sales Co. v. United States*, 335 F. Supp. 3d 1330, 1346 (Ct. Int'l Trade 2018) ("mere disagreement" with Commerce's weighing of evidence insufficient basis for challenge); *Gov't of Argentina v. United States*, 542 F. Supp. 3d 1380, 1395 (Ct. Int'l Trade 2021) (same).

With respect to the second factor that WTTC cites, involving CS Wind Korea serving as importer of record for relevant entries and charging its customers a certain fee (the specifics of which are proprietary), Commerce reasonably found that "the existence of an affiliated company that serves as an importer of record does not inherently evince efforts to manipulate the value of sales, whether to an affiliate or to an unaffiliated party." Remand Results at 9. Commerce relatedly explained that, because 19 C.F.R § 351.525(a) requires Commerce to determine the sales value of a product on a free on board (f.o.b.) basis, "the sales value that Commerce uses is net of movement expenses . . . and would not include for example, this type of fee." *Id.* As a result, WTTC's "concern that the sales value Commerce has used in the denominator of its CVD rate calculations is overstated . . . by the inclusion of this fee, is unfounded and unsupported by record evidence." *Id.* at 9-10. Following this explanation, WTTC appears not to pursue its argument that charging customers the certain fee constitutes evidence of manipulation. Thus, this factor fails to demonstrate manipulation by CS Wind.

6

With respect to the third factor, involving CS Wind Korea becoming [

], Commerce reasonably found that "taking into account tax implications in structuring contracts is a legitimate commercial consideration."  Remand Results at 11.  Further, Commerce found that "the fact that the companies structured their contracts in a particular way for tax reasons detracts from the petitioners' allegation that the tolling arrangement was adopted in response to this investigation to manipulate CVD rates."  *Id.*  WTTC appears to have abandoned any specific arguments with respect to this factor.

Finally, with respect to the final factor, involving WTTC's claim that CS Wind provided insufficient rationale for using toll processing arrangements, Commerce found that WTTC failed to "cite affirmative evidence to support their argument" and instead argued incorrectly that "CS Wind Vietnam refused to answer Commerce's questions about the tolling agreements."  Remand Results at 11.  Contrary to WTTC's contentions, "the record shows that CS Wind Vietnam did answer Commerce's questions as to the reasons CS Wind Vietnam entered into toll processing agreements and the method by which CS Wind Korea set its transfer pricing."  *Id*.  Responding to Commerce's question regarding the reasons CS Wind Vietnam entered into toll processing agreements, for example, CS Wind Vietnam stated that "{s}ince CS Wind Corporation handles all of the sales, including the negotiations with those sales, it decided to establish tolling agreements with {CS Wind Vietnam} so that it could better control costs."  *Id*. at 11-12 (citing Nov. 6 SQR at 3 (P.R. 122-128; C.R. 76-82)).

Likewise, regarding the method by which CS Wind Korea set its transfer pricing, Commerce quoted a portion of CS Wind Vietnam's response to Commerce's questions about how transfer pricing was determined:

> There is no set formula.  Normally, the sales price of wind towers comprises of material costs and processing costs.  CS Wind

> Corporation {Korea} estimates consumption quantity of material
> and material prices based on the market prices.  CS Wind
> Corporation also estimates workload for production of the wind
> tower and determines {the} processing fee including the profit
> margin.  The processing fee charged by {CS Wind Vietnam} to CS
> Wind Corporation is determined by some portion (percentage) of
> {the} processing fee charged by CS Wind Corporation to the
> customer.  The percentage of {the} processing fee is determined by
> CS Wind Group's internal transfer price policy.  Depending on the
> workload for production of the wind tower, {the} processing fees
> can be differentiated due to the size of the wind tower and how
> many parts there are to be mounted in the wind tower.

Remand Results at 12 (quoting Nov. 6 SQR at 3-4 (P.R. 122-128; C.R. 76-81)).

WTTC cites the first half of CS Wind Vietnam's response concerning the toll processing
agreement, in which CS Wind Vietnam objects to Commerce's line of questioning, stating "{w}e
fail to see how this question has anything to do with this case.  CS Wind Corporation's business
decision to structure {its} sales in this manner is not relevant to the CVD case in Vietnam."
WTTC Br. 5 (quoting Nov. 6 SQR at 3 (P.R. 122-128; C.R. 76-82)).  However, despite CS Wind
Vietnam's initial objection, it went on to answer Commerce's question, stating,

> CS Wind Corporation has only sales and administrative functions
> in Korea.  The company has established production facilities
> outside of Korea such as Vietnam, China and *etc.* to handle the
> production side of the business.  Since CS Wind Corporation
> handles all of the sales, including the negotiations with those sales,
> it decided to establish tolling agreements with CSWV so that it
> could better control costs.

Remand Results at 33 (quoting Nov. 6 SQR at 3 (P.R. 122-128; C.R. 76-82)).  WTTC's view
that this response was too "cursory" does not alter Commerce's conclusion that CS Wind
adequately responded to Commerce's question.  *See* WTTC Br. 5; Remand Results at 33, 34.

In short, WTTC's speculative claims that the tolling arrangement was adopted for a
nefarious purpose and that CS Wind provided inadequate responses are unfounded.  Contrary to
WTTC's characterization of Commerce's findings as "general conjecture," WTTC Br. 5,

8

Commerce engaged in a thorough review of the record evidence and lawfully concluded that "the record reflects that CS Wind Vietnam provided adequate responses to our questions." Remand Results at 34. The record evidence demonstrates that the tolling arrangement was established to "better control the costs," which is a legitimate business purpose. *Id.* at 33.

Overall, Commerce reasonably concluded that "none of {WTTC's} four claims of potential manipulation was supported by record evidence." *Id.* at 28. Commerce also addressed WTTC's arguments that the individually meritless factors collectively establish manipulation. *See id.* at 27-29. Commerce specifically explained that "{b}ecause the petitioners neither present sufficient evidence nor advance a theory explaining how any of the cited business practices could manipulate the denominator of the subsidy rate calculation (*i.e.*, CS Wind Korea's sales value of subject merchandise produced by CS Wind Vietnam), we find that the record evidence does not substantiate the allegation of manipulation." *Id.* at 28. Thus, having addressed WTTC's evidence and arguments, both individually and collectively, Commerce's remand results concerning the manipulation issue should be sustained.

## II.   WTTC's Arguments Regarding The Import Duties Exemption Program Lack Merit

Consistent with the Court's remand order, Commerce lawfully addressed WTTC's evidence and arguments concerning the Import Duties Exemption program. Specifically, Commerce substantiated its conclusion that CS Wind Vietnam did not import steel plate in light of detracting evidence, explained the salience of Vietnam's Most Favored Nation (MFN) tariff rate to the determination that CS Wind Vietnam's steel plate inputs were purchased in Vietnam, explained the broader relevance of MFN rates, and explained whether various scenarios would result in eligibility for benefits under the program. Remand Results at 16-23, 36-40. WTTC's comments fail to meaningfully address the core of Commerce's determination.

The central issue that Commerce had to resolve is whether CS Wind Vietnam received a benefit from the Import Duty Exemption program with respect to certain purchases of steel plate. Under the program, import duty exemptions are provided for imported raw materials that are incorporated into exported goods, or directly used in production of such goods. Remand Results at 37. The amount of the exemption is equal to the amount of the duty otherwise applicable to the value of imported materials used in production of finished goods that are ultimately exported. *Id*. Accordingly, "{t}o answer the central question of whether CS Wind Vietnam received a benefit for this steel plate from the Import Duty Exemption program, Commerce needed to determine which inputs CS Wind Vietnam imported, and whether CS Wind Vietnam paid the appropriate corresponding duties on imported inputs." *Id*.

On remand, in addressing the issue, Commerce substantiated its conclusion that CS Wind Vietnam *did not* import the steel plate at issue. Remand Results at 17-20, 37-40. WTTC argues that the steel plate could not have been sourced from within Vietnam because the reported Vietnamese supplier of steel plate does not operate a plate mill in Vietnam, and thus could not have produced the steel plate in Vietnam. WTTC Br. 8. WTTC contends incorrectly, however, that Commerce did not address this evidence in the remand results. *Id*. ("Without addressing this evidence, however, Commerce still concludes in the *Final Remand Results* that the steel plate in question 'is sourced from within Vietnam.'"). To the contrary, Commerce in the remand results *expressly* addressed this evidence:

> With respect to the petitioners' argument that the steel plate could not have been sourced from within Vietnam because the reported Vietnamese supplier of steel plate does not operate a plate mill in Vietnam, we find that the evidence cited by the petitioners does not preclude possibilities in which steel plate can be sourced from within Vietnam even if the mill where the plate was produced was located outside Vietnam. Record evidence demonstrates that [          ] purchased the steel plate from [                    ] for

> use by [                    ].  The [                    ]
> demonstrates that the steel plate was transported by [      ] from
> [                  ] to [                      ] and thus never left the
> country.  Regardless, if [                    ] imported the steel plate,
> *neither CS Wind Korea nor CS Wind Vietnam would be the*
> *importer and would not be liable for import duties, if such duties*
> *were applicable, and would not be the beneficiary of any*
> *exemptions of those duties.*

Remand Results at 19 (emphasis added) (citing Verification Report at Ex. VE-15, p. 71 (P.R.

185; C.R. 104)).  Consequently, WTTC's "contention that this plate must have come from

outside of Vietnam, and must have been imported by CS Wind Vietnam, is not substantiated by

their allegation that the supplier in question lacks a plate mill in the country." *Id.* at 19-20.

Similarly, WTTC's "focus on whether the steel plate supplier operates a plate mill in

Vietnam is not dispositive to the analysis of whether CS Wind Vietnam received a benefit with

respect to the steel plate at issue under the Import Duty Exemption program." *Id*. at 38.   Rather,

it is important to understand how the Import Duty Exemption program operates and how the

benefit under the program is bestowed.  As Commerce explained, "the Import Duty Exemption

Program provides import duty exemptions for imported raw materials that are incorporated into

exported goods, or directly used in the production of such goods." *Id*.  Accordingly, "the

relevant question for analysis of CS Wind Vietnam's use of this program is whether CS Wind

Vietnam imported the steel plate." *Id*.   Commerce, in this regard, "determined that the steel

plate was sourced (purchased) from within Vietnam based on evidence on the record, including

invoices, packing lists, and examination of CS Wind Vietnam's purchases at verification." *Id*.

(citing Verification Report at Ex. VE-15, p. 71 (P.R. 185; C.R. 104); Nov. 6 SQR at Ex. SQ2-18,

p. 18 (C.R. 80); CS Wind Add'l First Supp. Questionnaire Resp. at Ex. SQ2-6a (Nov. 8, 2019)

(Nov. 8 SQR) (P.R. 130: C.R. 83) (showing Vietnamese supplier, port of loading, and method of

transportation)).

Moreover, Commerce recognized that the evidence that the steel plate supplier did not have a plate mill in Vietnam detracted from its determination.  Remand Results at 20, 40.  However, Commerce addressed this evidence on remand and found that it was outweighed by the various forms of record evidence indicating that the steel plate was sourced in Vietnam.  *Id.*  Commerce explained that such evidence "does not establish that CS Wind Vietnam imported the plate" and that "{e}ven if the supplier did not itself produce the plate in Vietnam, it could have purchased and resold in Vietnam the plate produced by another company." *Id.* at 38.  Likewise, even if the supplier imported the steel plate, that does not make CS Wind Vietnam liable for the import duties to which an exemption might apply.  That is because "to receive the benefit under the program, a party has to be an importer of record, and has to have imported steel plate and paid duties on the imported plate to which the exemption might apply." *Id.*  Commerce, in this case, found "no evidence that CS Wind Vietnam imported the steel plate at issue and paid import duties on it" and that "the record evidence demonstrates that CS Wind Vietnam's affiliate purchased the plate in Vietnam from an unaffiliated party." *Id.* at 38-39.

WTTC's arguments fail to show that Commerce's determination was unreasonable.  First, Commerce's determination is grounded in substantial record evidence.  As stated above, Commerce found that "{i}nvoices and packing lists on the record, as well as an examination of CS Wind Vietnam's purchases at verification, show that the steel plate in question was sourced from Vietnam, *i.e.*, purchased in the domestic market and not imported by CS Wind Vietnam." *Id.* at 38 (citation omitted).  The documents show a Vietnamese supplier, a port of loading in Vietnam, and a local method of transportation.  *See* Verification Report at Ex. VE-15, pp. 68-75 (P.R. 185; C.R. 104); Nov. 6 SQR at Ex. SQ2-18, pp. 18-19 (C.R. 80); Nov. 8 SQR at 1 & Ex. SQ2-6a (P.R. 130: C.R. 83).  Relatedly, as Commerce documented in its Verification Report, CS

Wind officials explained that CS Wind included *domestic* purchases of steel plate in its reporting to Commerce (even though the issue concerns exemptions from duties on imports) because it was required to report the purchases to Vietnam Customs.  Specifically, "{o}fficials explained that if the supplier is from outside Vietnam, but the raw materials are *sourced from inside Vietnam*, then these raw material inputs still need to be entered into the E-customs system *even if they are ultimately not imported*."  Verification Report at 16 (P.R. 186; C.R. 105) (emphasis added); IDM at 17 (quoting same); *see also* Remand Results at 18-19.

Conversely, to the extent WTTC contends that CS Wind Vietnam benefited from the Import Duty Exemption program for steel plate purchases made from an unaffiliated Vietnamese company, WTTC must demonstrate that CS Wind Vietnam was the importer of record with respect to imported steel plate, and thus was liable for paying import duties on the steel plate to which exemptions applied.  Absent such evidence, there is no basis to find that CS Wind Vietnam received a benefit from the Import Duties Exemption program with respect to the steel plate that its affiliate purchased from an unaffiliated Vietnamese company.  WTTC has made no such showing.  WTTC thus has failed to substantiate its allegations that WTTC received a benefit by being exempted from payment of import duties on the steel plate at issue.

WTTC asserts that Commerce found the evidence cited by WTTC insufficient to outweigh the record evidence demonstrating that the steel plate was sourced from within Vietnam, but that Commerce did not cite "substantial evidence" regarding the origin of the steel plate.  WTTC Br. 6 (citing Remand Results at 17-18).  However, the possibility that the steel plate was first produced outside Vietnam does not change either the fact that it was sourced within Vietnam or that WTTC's evidence fails to establish that CS Wind Vietnam was the importer of record for materials that were purchased from an unaffiliated Vietnamese company.

*See* Remand Results at 38 (record "show{s} that the steel plate in question was sourced from Vietnam").  WTTC also fails to accurately restate Commerce's reasoning because Commerce stated that "{w}e find the evidence cited by the petitioners insufficient to outweigh the record evidence demonstrating that the steel plate was sourced from within Vietnam *and* because CS Wind Vietnam did not import this steel plate, it did not receive benefits under the Import Duty Exemption program."  *Id.* at 17 (emphasis added).  As explained above, regardless of the steel plate's origin, even "if [                    ] imported the steel plate, neither CS Wind Korea nor CS Wind Vietnam would be the importer and would not be liable for import duties, if such duties were applicable, and would not be the beneficiary of any exemptions of those duties." *Id*. at 19.

WTTC also argues that Commerce based its conclusion regarding the origin of the steel plate on "possibilities in which steel plate can be sourced from within Vietnam," rather than relying on record evidence identifying the country of origin of the steel plate.  WTTC Br. 6 (quoting Remand Results at 19).  As an initial matter, WTTC fails to provide the full context for this quote because Commerce was responding to the notion that the steel plate "*could not* have been sourced" in Vietnam based on the supplier's lack of a local plate mill, making the phrasing of Commerce's response in that paragraph appropriate.  Remand Results at 19 (emphasis added).  Elsewhere, Commerce stated unequivocally that the record evidence shows that the steel plate at issue was sourced in Vietnam.  *See*, *e.g.*, *id.* at 38.

Moreover, as Commerce explained, "the relevant question for analysis of CS Wind Vietnam's use of this program is whether CS Wind Vietnam imported the steel plate" because "to receive the benefit under the program, a party has to be an importer of record, and has to have imported steel plate and paid duties on the imported plate to which the exemption might apply."  Remand Results at 38.  The relevant issue is not merely whether the steel plate at issue

14

was produced or originated inside or outside Vietnam, but whether CS Wind Vietnam was an importer of record for the steel plate.  There is no evidence that demonstrates that CS Wind Vietnam has import duty liability to which exemptions under the program might apply.

WTTC next contends that "nothing in the record documentation that Commerce cited indicates that [                    ] imported the steel plate."  WTTC Br. 7.  WTTC is correct that it is unknown whether the unaffiliated supplier, [                    ], imported the steel plate or purchased it domestically in Vietnam, before selling and delivering it to the CS Wind entities.  In either scenario, however, CS Wind Vietnam would not be the importer of record for the steel plate that was transported by [        ] from the unaffiliated Vietnamese seller's Vietnam facility, and thus never left the country for the transaction.  *See* Remand Results at 18-19.  Contrary to WTTC's unsupported contentions that Commerce's determination is based on speculation and conjecture, Commerce considered the record evidence, explained how the evidence supports or detracts from its conclusions, and referenced the relevant evidence in its determination.

WTTC additionally contends that Commerce should have applied adverse facts available (AFA) to CS Wind Vietnam, and thus should have applied the highest subsidy rate for the Import Duty Exemption program from another proceeding involving Vietnam.  WTTC Br. 6-7, 9.  However, WTTC's argument is foreclosed.  This Court has already sustained Commerce's decision not to apply AFA for the Import Duty Exemption program, and thus, the Court did not remand this issue to Commerce to reconsider on remand.  *WTTC*, 569 F. Supp. 3d at 1259, 1260.

Finally, WTTC contends that Commerce's conclusion regarding the MFN rate is unsupported by substantial evidence.  WTTC Br. 9-10.  Specifically, Commerce stated that "even if Commerce were to determine incorrectly that the steel plate at issue was imported (which it did not), Commerce's determination would have no effect on the calculation of the

15

benefit under this program, because the imported steel plate would have been subject to a duty rate of zero, pursuant to MFN status; thus, there would be no benefit from the Import Duty Exemption Program for the steel plate at issue." Remand Results at 21. WTTC contends that determining the MFN status would require further analysis because there are a small number of countries that are not WTO members and MFN status can be revoked, as shown by recent revocations of the MFN status of the Russian Federation by various countries. WTTC Br. 9. In addressing this argument, Commerce explained that it is unnecessary to reach the MFN status issue. Remand Results at 39-40. As Commerce stated, "given that the record evidence shows that the steel plate was sourced from within Vietnam rather than imported by CS Wind Vietnam, this point is not relevant. Only if the record evidence demonstrated that the steel plate at issue was imported by CS Wind Vietnam from another country, which it does not, would we need to determine whether that country is subject to the MFN rate." *Id.* Accordingly, WTTC's contentions regarding MFN status provide no basis for remand, given that record evidence does not demonstrate that the steel plate was imported by CS Wind Vietnam from another country.

## <u>CONCLUSION</u>

For these reasons, we respectfully request that the Court sustain the remand results.

Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

PATRICIA M. MCCARTHY
Director

/s/ Reginald T. Blades, Jr.
REGINALD T. BLADES, JR.
Assistant Director

OF COUNSEL:

MYKHAYLO GRYZLOV
Senior Counsel
Office of the Chief Counsel
for Trade Enforcement & Compliance
U.S. Department of Commerce

October 21, 2022

/s/ Joshua E. Kurland
JOSHUA E. KURLAND
Senior Trial Counsel
Commercial Litigation Branch
Civil Division
U.S. Department of Justice
P.O. Box 480, Ben Franklin Station
Washington, D.C. 20044
Tel.: (202) 616-0477
Email: Joshua.E.Kurland@usdoj.gov

*Attorneys for Defendant United States*

## **CERTIFICATE OF COMPLIANCE**

I hereby certify that this brief complies with the word limitation of Court of International Trade Standard Chambers Procedures § 2(B)(1) and contains 4,957 words, excluding the parts of the brief exempted from the word limitation.  In preparing this certificate of compliance, I have relied upon the word count function of the word processing system used to prepare the brief.


/s/ Joshua E. Kurland