Slip Op. 23-63

## UNITED STATES COURT OF INTERNATIONAL TRADE

|  |  |
|---|---|
| **WIND TOWER TRADE COALITION**, | |
| Plaintiff, | **Before: Timothy M. Reif, Judge** |
| v. | **Court No. 20-03692** |
| **UNITED STATES**, | **PUBLIC VERSION** |
| Defendant. | |

## OPINION

[Sustaining Commerce's Remand Results.]

Dated: April 27, 2023

Derick G. Holt, Wiley Rein LLP, of Washington, D.C., argued for plaintiff Wind Tower Trade Coalition.  On the brief were Alan H. Price, Robert E. DeFrancesco, III, Maureen E. Thorson and Laura El-Sabaawi.

Ashley Akers, Trial Attorney, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of Washington, D.C., argued for defendant United States.  On the brief were Brian M. Boynton, Principal Deputy Assistant Attorney General, Patricia M. McCarthy, Director, Reginald T. Blades, Jr., Assistant Director, and Joshua E. Kurland, Senior Trial Counsel.  Of counsel on the brief was Mykhaylo Gryzlov, Senior Counsel, Office of the Chief Counsel for Trade Enforcement and Compliance, U.S. Department of Commerce, of Washington, D.C.

Reif, Judge:  Before the court are the remand results of the U.S. Department of Commerce ("Commerce") pursuant to the court's order in *Wind Tower Trade Coalition v. United States* ("*Wind Tower I*"), 46 CIT __, __, 569 F. Supp. 3d 1221, 1260-61 (2022).  *See* Final Results of Redetermination Pursuant to Ct. Remand, ECF Nos. 37-38 ("Remand Results").  In *Wind Tower I*, the court sustained in part and remanded in part Commerce's final determination in the countervailing duty ("CVD") investigation on utility

**PUBLIC VERSION**

Court No. 20-03692                                                                                            Page 2

scale wind towers from the Socialist Republic of Vietnam ("Vietnam") for the period of

investigation ("POI") January 1, 2018, through December 31, 2018.  *See* 46 CIT at __,

569 F. Supp. 3d at 1260; *see also Utility Scale Wind Towers from the Socialist Republic*

*of Vietnam: Final Affirmative Countervailing Duty Determination and Negative*

*Determination of Critical Circumstances* ("*Final Determination*"), 85 Fed. Reg. 40,229

(Dep't of Commerce July 6, 2020) and accompanying Issues and Decision

Memorandum ("IDM"), PR 215.  The court ordered Commerce to discuss evidence and

arguments that Wind Tower Trade Coalition ("WTTC" or "plaintiff") raised pertaining to

potential manipulation.  46 CIT at __, 569 F. Supp. 3d at 1260.  In addition, the court

remanded for Commerce to "substantiate its conclusion" as to the import status of the

steel plate in question in light of certain evidence and arguments and to describe the

significance, if any, of the most favored nation ("MFN") tariff rate listed to its

determination.  *Id.* at __, 569 F. Supp. 3d at 1260.

On remand, Commerce provided explanation and analysis as to potential

manipulation related to the denominator in its subsidy calculation and provided

additional explanation for its conclusion that the steel plate in question was sourced

from within Vietnam.  Remand Results at 2.  For the following reasons, the court

sustains Commerce's Remand Results.

**BACKGROUND**

The court presumes familiarity with the facts, as set out in *Wind Tower I*, and

recounts only those facts relevant to the issues before the court on remand.

**PUBLIC VERSION**

Court No. 20-03692                                                                                           Page 3

In its decision of March 24, 2022, the court addressed: (1) whether Commerce's use of the sales value of CS Wind Corporation ("CS Wind Korea") for wind towers produced by CS Wind Vietnam as the denominator for the subsidy rate calculation was supported by substantial evidence and was in accordance with law; and (2) whether "Commerce's acceptance of certain steel plate documentation" provided by CS Wind Vietnam Co., Ltd. ("CS Wind Vietnam") for the Import Duty Exemptions on Imports of Raw Materials for Exporting Goods program ("Import Duty Exemptions program") and determination not to apply adverse facts available ("AFA") as related to such documentation were supported by substantial evidence. *Wind Tower I*, 46 CIT at __, 569 F. Supp. 3d at 1225, 1232-59.

With respect to the sales value used for the denominator, the court in *Wind Tower I* held that the denominator was "not inconsistent with [Commerce's] regulations . . . or prior determinations." *Id.* at __, 569 F. Supp. 3d at 1259.  However, the court also concluded that Commerce "did not discuss or address the evidence that WTTC presented or address the relevant argument on manipulation." *Id.* at __, 569 F. Supp. 3d at 1249-50.  The court ordered Commerce to: "(1) discuss and address the evidence that WTTC presented as related to manipulation; (2) address WTTC's manipulation argument as to the denominator used in the benefit calculation; and (3) explain whether Commerce considered manipulation in reaching its determination, or if it did not, why it did not." *Id.* at __, 569 F. Supp. 3d at 1260.

**PUBLIC VERSION**

With respect to the steel plate in question, the court concluded that Commerce did not "substantiate its conclusion that CS Wind Vietnam did not import the steel plate" considering the record as a whole. *Id.* at __, 569 F. Supp. 3d at 1258. The court also concluded that Commerce "did not explain the salience, if any, of the MFN zero percent rate to its determination." *Id.* at __, 569 F. Supp. 3d at 1257-58 (citing Memorandum from Davina Friedmann, Senior Case Analyst, AD/CVD Operations, Off. VI, to Erin Kearney, Program Manager, AD/CVD Operations, Off. VI, re: *Final Determination of Countervailing Duty Investigation of Utility Scale Wind Towers from Vietnam: Calculation Memorandum for CS Wind Vietnam Co., Ltd.* (June 29, 2020) ("Calculation Mem.") at attach. II, tab "Raw Materials.Rev.ATT2.BPI," CR 120-121). However, the court concluded that "Commerce's decision not to apply AFA [for the Import Duty Exemptions program] [wa]s supported by substantial evidence." *Id.* at __, 569 F. Supp. 3d at 1258 (citing 19 U.S.C. § 1677e(a)(2)(A), (a)(2)(C)-(D)). Accordingly, the court ordered Commerce to address arguments and evidence pertaining to the origin of the steel plate and describe the significance of the MFN rate that appears in certain places on the record:

> (4) [S]ubstantiate [the] conclusion that CS Wind Vietnam did not import the steel plate in light of the evidence and arguments that detract from Commerce's conclusion that were presented by WTTC; (5) state the salience, if any, of the MFN rate to its determination that the raw material inputs in question came from Vietnam; and (6) explain why it has listed an MFN tariff rate in its calculations of the Import Duty Exemptions program for the line entries of the raw material inputs in question that also are listed as having a country of origin of Vietnam. In addressing these points, Commerce is to explain: (7)(a) if CS Wind Vietnam were the importer of record, would it be eligible to receive a benefit under the Import Duty

**PUBLIC VERSION**

Exemptions program; (7)(b) If CS Wind Korea were the importer of record and transferred the raw material inputs to CS Wind Vietnam, would either CS Wind Vietnam or CS Wind Korea be eligible to receive a benefit under that program; and (7)(c) if an unaffiliated third entity were the importer of record and sold the raw material inputs to CS Wind Korea for processing by CS Wind Vietnam, would CS Wind Vietnam be eligible to receive a benefit under that program.

*Id.* at __, 569 F. Supp. 3d at 1260.

On June 22, 2022, Commerce issued its draft redetermination ("Draft Remand Results"). Remand Results at 2 (citing Draft Results of Redetermination Pursuant to Ct. Remand (June 22, 2022), *Wind Tower Trade Coal.*, Court No. 20-03692, 46 CIT __, Slip. Op. 22-27 (Mar. 24, 2022)). On June 29, 2022, WTTC provided comments on the Draft Remand Results. *Id.* (citing Pet'rs' Letter, re: Utility Scale Wind Towers from the Socialist Republic of Vietnam: Comments on Draft Results of Redetermination (June 29, 2022) ("Pet'rs' Cmts. on Draft Remand Results")).

On July 22, 2022, Commerce filed its final Remand Results, in which Commerce responded to the court's remand order, addressed WTTC's comments and continued to apply the same CVD rates as in the *Final Determination*. *See id.* On September 7, 2022, WTTC provided comments on the Remand Results wherein WTTC argues that the "Remand Results do not fully and adequately address the [c]ourt's remand requests and are inconsistent with both the facts and law." *See* Pl.'s Cmts. on Remand Determination ("Pl. Br.") at 1, ECF Nos. 42-43. On October 21, 2022, defendant United States (the "Government") responded to plaintiff's comments. *See* Def.'s Resp. to Pl.'s Cmts. on Remand Results ("Def. Br."), ECF Nos. 46-47.

**PUBLIC VERSION**

Court No. 20-03692                                                                                          Page 6

On March 1, 2023, the court heard oral argument.  *See* Oral Arg., Mar. 1, 2023,
ECF No. 55.

## JURISDICTION AND STANDARD OF REVIEW

The court has jurisdiction pursuant to sections 516A(a)(2)(A)(i)(II) and (a)(2)(B)(i)
of the Tariff Act of 1930, as amended, 19 U.S.C. § 1516a(a)(2)(A)(i)(II) and (a)(2)(B)(i)
(2018), and 28 U.S.C. § 1581(c).[1]

On remand, the court will sustain Commerce's determination if it is "in
accordance with the remand order, . . . supported by substantial evidence[] and . . .
otherwise in accordance with law."  *MacLean-Fogg Co. v. United States*, 39 CIT __, __,
100 F. Supp. 3d 1349, 1355 (2015) (citing 19 U.S.C. § 1516a(b)(1)(B)(i)); *see Prime
Time Com. LLC v. United States*, 45 CIT __, __, 495 F. Supp. 3d 1308, 1313 (2021)
(quoting 19 U.S.C. § 1516a(b)(1)(B)(i); *Xinjiamei Furniture (Zhangzhou) Co. v. United
States*, 38 CIT 189, 190, 968 F. Supp. 2d 1255, 1259 (2014)), *aff'd*, No. 2021-1783,
2022 WL 2313968 (Fed. Cir. June 28, 2022); *see also Jiangsu Zhongji Lamination
Materials Co., (HK) v. United States*, 44 CIT __, __, 435 F. Supp. 3d 1273, 1276 (2020)
(quoting *Xinjiamei Furniture (Zhangzhou) Co.*, 38 CIT at 190, 968 F. Supp. 2d at 1259).

Substantial evidence constitutes "such relevant evidence as a reasonable mind
might accept as adequate to support a conclusion."  *Universal Camera Corp. v. NLRB*,
340 U.S. 474, 477 (1951) (quoting *Consol. Edison Co. of N.Y. v. NLRB*, 305 U.S. 197,

---

[1] Further citations to the Tariff Act of 1930, as amended, are to the relevant portions of
Title 19 of the U.S. Code, and references to the U.S. Code are to the 2018 edition.

229 (1938)).  Substantial evidence requires "more than a mere scintilla" of evidence.  *Id.*

(quoting *Consol. Edison Co.*, 305 U.S. at 229).  In addition, "[i]t is well-established that

an agency's action must be upheld, if at all, on the basis articulated by the agency

itself."  *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463

U.S. 29, 50 (1983) (footnote omitted) (citing *Burlington Truck Lines, Inc. v. United*

*States*, 371 U.S. 156, 168 (1962); *SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947);

*Am. Textile Mfrs. Inst., Inc. v. Donovan*, 452 U.S. 490, 539 (1981)).  "The substantiality

of evidence must take into account whatever in the record fairly detracts from its

weight."  *Universal Camera Corp.*, 340 U.S. at 488; *see Nippon Steel Corp. v. United*

*States*, 458 F.3d 1345, 1351 (Fed. Cir. 2006) ("A reviewing court must consider the

record as a whole, including that which 'fairly detracts from its weight', to determine

whether there exists 'such relevant evidence as a reasonable mind might accept as

adequate to support a conclusion.'" (quoting *Universal Camera Corp.*, 340 U.S. at 477-

78)).

    However, "the Court will not disturb an agency determination if its factual findings

are reasonable and supported by the record as a whole, even if there is some evidence

that detracts from the agency's conclusion."  *Shandong Huarong Gen. Corp. v. United*

*States*, 25 CIT 834, 837, 159 F. Supp. 2d 714, 718 (2001) (citing *Heveafil Sdn. Bhd. v.*

*United States*, 25 CIT 147, 149 (2001)), *aff'd sub nom. Shandong Huarong Gen. Grp.*

*Corp. v. United States*, 60 F. App'x 797 (Fed. Cir. 2003).  Moreover, "the possibility of

drawing two inconsistent conclusions from the evidence does not prevent an

**PUBLIC VERSION**

Court No. 20-03692                                                                                     Page 8

administrative agency's finding from being supported by substantial evidence."  *Altx,*

*Inc. v. United States*, 370 F.3d 1108, 1116 (Fed. Cir. 2004) (alteration in original)

(quoting *Matsushita Elec. Indus. Co. v. United States*, 750 F.2d 927, 933 (Fed. Cir.

1984)).

**LEGAL FRAMEWORK**

Commerce imposes a countervailing duty if: (1) Commerce "determines that the

government of a country or any public entity within the territory of a country is providing,

directly or indirectly, a countervailable subsidy with respect to the manufacture,

production, or export of a class or kind of merchandise imported, or sold . . . for

importation, into the United States"; and (2) the U.S. International Trade Commission

determines that "an industry in the United States is materially injured, or is threatened

with material injury, or the establishment of an industry in the United States is materially

retarded, by reason of [subject] imports."  19 U.S.C. § 1671(a).  A subsidy is

countervailable when it is specific and when "a government of a country or any public

entity within the territory of the country" provides a financial contribution, which confers

a benefit.  *Id.* § 1677(5).

To calculate the "*ad valorem* subsidy rate" in a CVD investigation or review,

[Commerce] will . . . divid[e] the amount of the benefit allocated to the [POI]
. . . by the sales value during the same period of the product or products to
which [Commerce] attributes the subsidy . . . .  Normally, [Commerce] will
determine the sales value of a product on an f.o.b. (port) basis (if the product
is exported) . . . .  However, if [Commerce] determines that countervailable
subsidies are provided with respect to the movement of a product from the
port . . . to the place of destination (*e.g.*, freight or insurance costs are

Court No. 20-03692                                                                                               Page 9

subsidized), [Commerce] may make appropriate adjustments to the sales
value used in the denominator.

19 C.F.R. § 351.525(a).

## DISCUSSION

The court addresses whether Commerce's Remand Results as related to

potential manipulation and the import status of the steel plate in question are supported

by substantial evidence and in compliance with the remand order.

### I.        Potential manipulation of the CVD rate

### A.        Positions of the parties

Plaintiff argues that the Remand Results are "unsupported by substantial

evidence" and unresponsive to the remand order.  Pl. Br. at 3.  Specifically, plaintiff

claims that Commerce "fails to recognize how th[e] evidence, as a whole, demonstrates

the potential for CS Wind to game U.S. [antidumping duty ("AD") and CVD] law and its

interest in doing so" because, plaintiff alleges, Commerce reviewed the evidence of

manipulation in a "piecemeal fashion."  *Id.* at 3-4.[2]  Instead, plaintiff insists: "Taken as a

---

[2] For instance, plaintiff argues that Commerce's identification of certain tolling contracts
is insufficient to show "the reason for the [[

                                                                                                    ]]."  Pl. Br. at 4
(footnote omitted).  Plaintiff states that there were "numerous other structural changes"
and events around that time.  *Id.* at 4-6.  Plaintiff also raises similar arguments as it
raised in its motion for judgment on the agency record ("motion") about the insufficiency
of and lack of support for CS Wind Vietnam's statements as to the reasons that it used
tolling agreements, such as to "better control costs," and Commerce's treatment of the
response.  *Id.* at 5 (quoting Remand Results at 12) (citing Letter from Grunfeld,
Desiderio, Lebowitz, Silverman and Klestadt LLP to Sec'y Commerce, re: *CS Wind First*
(footnote continued)

**PUBLIC VERSION**

whole, this series of actions and the time at which they occurred suggest that CS Wind was redesigning its operations to minimize the impact of new/renewed antidumping and countervailing duty investigations and orders."  *Id.* at 4.[3]

By contrast, the Government argues that it was reasonable for Commerce to find that plaintiff's two arguments with respect to manipulation are unsupported by the record.  Def. Br. at 3.  The Government claims that plaintiff's first argument "lacks merit" because the court "has already rejected WTTC's contention that Commerce's use of CS Wind Korea's sales revenues in the denominator is inconsistent with Commerce's regulations and practice."  *Id.* at 4 (citing *Wind Tower I*, 46 CIT at __, 569 F. Supp. 3d at 1232); *see* Remand Results at 26 (declining to consider consistency argument).

The Government also rejects plaintiff's second argument that Commerce "failed to consider the evidence [of potential manipulation] 'as a whole.'"  Def. Br. at 4.  Commerce examined the four circumstances relating to potential manipulation to conclude that the WTTC's claims were "unsubstantiated" and "unsupported" by the record, "whether the pieces of information are considered individually or collectively."  Remand Results at 28; *see* Def. Br. at 4 (quoting Remand Results at 28).  In addition,

-------

*Supplemental Questionnaire Response: Countervailing Duty Investigation of Utility Scale Wind Towers from Vietnam (C-522-826)* (Nov. 6, 2019) ("First SQR") at 3, CR 76-82, PR 122-128); *see* WTTC's Mem. in Supp. of Rule 56.2 Mot. for J. upon Agency R. ("Pl. Mot.") at 22-23, ECF No. 13.

[3] Plaintiff also reprises its arguments that the denominator was "inconsistent with [Commerce's] regulations and past practice."  Pl. Br. at 3.  The court concluded in *Wind Tower Trade Coalition v. United States* ("*Wind Tower I*"), 46 CIT __, __, 569 F. Supp. 3d 1221, 1232-39 (2022), that these arguments were not persuasive.

**PUBLIC VERSION**

Commerce found that the evidence does not "have the potential to affect the denominator [Commerce] used to calculate the countervailable subsidy rate."  Remand Results at 28; Def. Br. at 4-5 (quoting Remand Results at 28).

Regarding plaintiff's second argument, the Government claims that Commerce examined all four circumstances relating to potential manipulation and found plaintiff's claims to be "unsubstantiated."  Def. Br. at 4-5 (quoting Remand Results at 28) (citing Remand Results at 5-16, 26-35).  With respect to the first circumstance, the Government disagrees with plaintiff's claim that CS Wind Vietnam and its parent company "'suddenly' adopted the tolling arrangements [during the POI] to avoid payment of countervailing duties."  Def. Br. at 5 (citing Remand Results at 7).  Instead, Commerce found that CS Wind Vietnam and CS Wind Korea entering into tolling agreements was a "continuation of a preexisting business arrangement" since both companies had adopted tolling agreements with similar terms in past years.  Remand Results at 8; *see* Def. Br. at 5-6.  The Government adds that "disagreement with how Commerce weighted this evidence does not provide a basis for remand."  Def. Br. at 6 (citing *Haixing Jingmei Chem. Prod. Sales Co. v. United States*, 42 CIT __, __, 335 F. Supp. 3d 1330, 1346 (2018); *Gov't of Arg. v. United States*, 45 CIT __, __, 542 F. Supp. 3d 1380, 1395 (2021)).

As to the second circumstance, the Government argues that Commerce's finding — that an affiliate serving as "importer of record" does not demonstrate manipulation of the sales value, Remand Results at 9 — was reasonable, Def. Br. at 6 (quoting Remand

**PUBLIC VERSION**

Results at 9).  In addition, Commerce explained that its determination under 19 C.F.R. §

351.525(a) "would not include" the fee that WTTC raised.  Remand Results at 9; *see*

Def. Br. at 6 (quoting Remand Results at 9).

Regarding the third circumstance, the Government argues that Commerce

reasonably found that CS Wind Korea "taking into account tax implications in structuring

contracts is a legitimate commercial consideration."  Remand Results at 11; Def. Br. at

7 (quoting Remand Results at 11).  Further, the Government notes that WTTC "appears

not to pursue its argument" as to the fee raised and "appears to have abandoned any

specific arguments" as to the third factor.  Def. Br. at 6-7.[4]

Last, with respect to the fourth circumstance, the Government recounts that

Commerce found that WTTC "failed to 'cite affirmative evidence'" to support its claim

that CS Wind Vietnam provided an "insufficient rationale for using toll processing

arrangements."  *Id.* at 7; *see* Remand Results at 11.  To the contrary, the Government

notes the evidence upon which Commerce based its conclusion that CS Wind Vietnam

did answer sufficiently Commerce's question.  Def. Br. at 7-8 (quoting Remand Results

at 11-12, 33).  Namely, CS Wind Vietnam explained the reason that it adopted tolling

---

[4] At oral argument on remand, plaintiff explained that it had not waived or abandoned its claims as to the fee raised and the third circumstance, both of which plaintiff asserted should be considered as a whole with the other circumstances raised.  Remand Oral Arg. Tr. at 16:14-16, 17:6-10, 17:14-19, 17:23-18:2, 18:25-19:1, Mar. 1, 2023; *see* Pl. Br. at 4.  The court acknowledges that plaintiff set out and continues to take issue with CS Wind's actions, as WTTC raised in its case brief before Commerce.  *See* Pl. Br. at 2-3 (citation omitted) (noting the four considerations), 4 (citing Letter from Wiley Rein LLP to Sec'y Commerce, re: *Utility Scale Wind Towers from the Socialist Republic of Vietnam: Case Brief* (Apr. 3, 2020) ("WTTC Case Br.") at 26-28, CR 107-108, PR 194).

**PUBLIC VERSION**

Court No. 20-03692                                                                                      Page 13

agreements and described "the method by which CS Wind Korea set its transfer

pricing."  Remand Results at 11-12 (quoting First SQR at 3-4); *see* Remand Results at

33 (quoting First SQR at 3); Def. Br. at 7-8 (quoting Remand Results at 11-12, 33).

    **B.    Analysis**

    In *Wind Tower I*, the court concluded that Commerce "did not address petitioner's

(now plaintiff's) argument that using CS Wind Korea's sales value in the denominator

could allow CS Wind Vietnam to manipulate the CVD rate."  46 CIT at __, 569 F. Supp.

3d at 1248.  In accordance with the remand order, Commerce responded to each of the

three remand instructions as to potential manipulation.  *See id.* at __, 569 F. Supp. at

1260; Remand Results at 5-16.  Plaintiff argues on remand that Commerce did not

consider "as a whole" the evidence that WTTC presented as to potential manipulation

and that Commerce's Remand Results are not supported by substantial evidence.  Pl.

Br. at 3-4.  The court is not persuaded by plaintiff's argument and concludes that

Commerce's finding in the Remand Results that the evidence and arguments do not

demonstrate manipulation is supported by substantial evidence.  *See* Remand Results

at 28.

    Commerce addressed the evidence that plaintiff presented as to potential

manipulation.  *Id.* at 5-13; *see Wind Tower I*, 46 CIT at __, 569 F. Supp. 3d at 1240

(citing Pl. Mot. at 22-23) (describing the four issues that plaintiff raised).  Commerce

responded first to WTTC's claim that the nature and timing of the use of a tolling

agreement between CS Wind Vietnam and CS Wind Korea during the POI constituted

**PUBLIC VERSION**

evidence of manipulation.  Remand Results at 6-8.  Specifically, Commerce cited

evidence of tolling agreements between the two entities in other years.  *Id*. at 7 (citing

Letter from Grunfeld, Desiderio, Lebowitz, Silverman & Klestadt LLP to Sec'y

Commerce, re: *CS Wind Verification Exhibits in the Countervailing Duty Investigation of*

*Utility Scale Wind Towers from Vietnam (C-552- 826)* (Mar. 4, 2020) ("Verification Exs.")

at VE-13, CR 101-104).

Commerce compared the tolling agreements for the POI with the tolling

agreements from other years to conclude that there were "substantially similar terms."

*Id*. at 7 (citing Verification Exs. at VE-13).  Moreover, Commerce found that the tolling

agreements during the POI "were not unusual in their terms regarding which party was

responsible for providing raw materials."  *Id.* (citing Letter from Grunfeld, Desiderio,

Lebowitz, Silverman and Klestadt LLP to Sec'y Commerce, re: *CS Wind Supplemental*

*Affiliation Response: Countervailing Duty Investigation of Utility Scale Wind Towers*

*from Vietnam (C-522-826)* (Sept. 20, 2019) at 2, CR 35, PR 76; Verification Exs. at VE-

13); *see id.* at 29-30 (citing Draft Remand Results at 7).  Commerce stated that the

"history" of similar tolling agreements between CS Wind Vietnam and CS Wind Korea —

agreements that Commerce considered to be "common business practices" — supports

its conclusion that the tolling agreements are not "evidence of manipulation."  *Id.* at 8

("[W]e do not consider the continuation of a preexisting business arrangement to be

**PUBLIC VERSION**

Court No. 20-03692                                                                    Page 15

evidence of manipulation."); *see id.* at 27-29 (citing Draft Remand Results at 10), 29-30

(citing Draft Remand Results at 7-8).[5]

Due to the tolling agreement during the POI, CS Wind Vietnam did not purchase

any inputs in 2018.  *Id.* at 30 (citing Pet'rs' Cmts. on Draft Remand Results at 4-5).

However, Commerce found that "the fact that CS Wind Vietnam [[

]]" was not "evidence of manipulation."  *Id.*

at 32.[6]  Commerce concluded reasonably that the change is "explained by the nature of

tolling arrangements" and is supported by evidence that the tolling arrangement "is a

commercial business arrangement that serves a legitimate purpose."  *Id.* at 30-31.

Commerce analyzed next WTTC's claim that "CS Wind Korea [[

]] and began [[

]]" allegedly to [[                                        ]].  *Id.* at 8-10 (quoting

WTTC Case Br. at 26-27); *see* Pl. Mot. at 22-23 (quoting Letter from Grunfeld,

Desiderio, Lebowitz, Silverman and Klestadt LLP to Sec'y Commerce, re: *CS Wind*

---

[5] Moreover, at oral argument on remand, plaintiff conceded that CS Wind Vietnam was not [[

]].  *See* Remand Oral Arg. Tr. at 9:11-13.

[6] Commerce also noted that CS Wind Vietnam provided information in response to a question on a 2017 project that did not involve a tolling agreement.  Remand Results at 34 (citing Memorandum from John McGowan and Julie Geiger, International Trade Analysts, Office VI, Antidumping and Countervailing Duty Operations, to The File, re: *Verification of the Questionnaire Responses of CS Wind Vietnam Co., Ltd., Countervailing Duty Investigation of Utility Scale Wind Towers from the Socialist Republic of Vietnam* (Mar. 18, 2020) ("Verification Mem.") at 10, CR 105, PR 186).

**PUBLIC VERSION**

*Initial Questionnaire Response: Countervailing Duty Investigation of Utility Scale Wind Towers from Vietnam (C-522-826)* (Oct. 9, 2019) ("IQR") at Ex. 13.1, CR 55-67; WTTC Case Br. at 26-27).  Commerce concluded that such facts are not evidence of "improper behavior" in the business relationship between CS Wind Korea and CS Wind Vietnam. Remand Results at 9; *see* Remand Results at 27 (citing Draft Remand Results at 15-16).  Specifically, Commerce explained that the "existence of an affiliated company that serves as an importer of record does not inherently evince efforts to manipulate the value of sales."  *Id.* at 9.  In addition, Commerce stated that an [[                              ]] — which Commerce could not identify in the exhibit that WTTC cites[7] — would not factor into Commerce's determination of the "sales value of a product on an f.o.b. basis" under 19 C.F.R. § 351.525(a).  *Id.* (alteration in original) (first quoting WTTC Case Br. at 26-27; and then quoting 19 C.F.R. § 351.525(a)).  Commerce found "insufficient evidence" that CS Wind Korea "[[

              ]]."  *Id.* at 10; *see id.* at 27-28.  Further, Commerce concluded that neither fact would "affect calculation of a countervailing duty rate, let alone provide evidence of an effort to manipulate the CVD rate calculated."  *Id.* at 10; *see id.* at 27-28 (footnote omitted).

---

[7] At oral argument on remand, WTTC suggested that [[        ]] was not a line item and raised Verification Exhibit 4 as evidence of [[        ]].  *See* Remand Oral Arg. Tr. at 14:19-15:16.  However, it does not appear that WTTC raised such arguments before Commerce.  *See* Remand Results at 9.

**PUBLIC VERSION**

Likewise, Commerce refuted WTTC's third consideration that the fact that CS Wind Korea "[[                                                                              ]]" demonstrated manipulation.  *Id.* at 10-11 (citing WTTC Case Br. at 27).  Instead, Commerce stated: "In general, [Commerce] find[s] that taking into account tax implications in structuring contracts is a legitimate commercial consideration."  *Id.* at 11. Moreover, Commerce found that the evidence does not demonstrate that the "[[

        ]] was designed to manipulate AD or CVD liability"; rather, Commerce concluded that the rationale "detracts from" plaintiff's earlier argument as to the reason that the entities used tolling agreements and shows that the "[[                 ]] was driven by [[              ]]."  *Id.* at 10-11 (citing Verification Exs. at VE-4 at 59); *see id.* at 27 (citing Draft Remand Results at 15-16).

In response to WTTC's fourth claim, Commerce reviewed CS Wind Vietnam's questionnaire response with its rationale as to the use of tolling agreements and transfer pricing.  *Id.* at 11-13 (quoting First SQR at 3-4).  Commerce found that CS Wind Vietnam's statements were sufficient: "The record evidence indicates that the parties entered into [sic] tolling arrangement to 'better control costs.'"  *Id.* at 12 (quoting First SQR at 3); *see id.* at 33 ("[D]espite CS Wind Vietnam's initial objection, it went on to answer Commerce's question.").  In addition, Commerce stated that WTTC did not "cite affirmative evidence" that CS Wind Vietnam and CS Wind Korea used tolling agreements to shift profits.  *Id.* at 11 (citing Verification Mem. at 28); *see id.* at 26 (citing *Crystalline Silicon Photovoltaic Cells, Whether or Not Assembled into Modules, from the*

**PUBLIC VERSION**

Court No. 20-03692                                                                                                           Page 18

*People's Republic of China: Final Affirmative Countervailing Duty Determination and Final Affirmative Critical Circumstances Determination*, 77 Fed. Reg. 63,788 (Dep't of Commerce Oct. 17, 2012) and accompanying IDM (Dep't of Commerce Oct. 17, 2012) at cmt. 10) (noting that "Commerce does not have an obligation to perform research on behalf of the petitioners and fill in the blanks in the petitioners' allegations")), 27 (citing Draft Remand Results at 15-16).

Moreover, Commerce concluded that WTTC's concerns "related to items that would not have affected [Commerce's] subsidy rate calculation." *Id.* at 33 (citing Draft Remand Results at 13-14); *see id.* at 34 (describing as insufficient both the evidence and argument as to "how tolling agreements could distort the *sales value* . . . used as the denominator"). In fact, Commerce discredited the alleged impact of potential manipulation on the subsidy rate calculation. *See id.* at 13-15, 27. For instance, Commerce explained that WTTC did not indicate how the alleged profit shifting or [[                              ]] would result in manipulation of the denominator used. *Id.* at 12 (on profit shifting), 15 (on [[                          ]]); *see id.* at 26 (finding insufficient evidence to support WTTC's allegations). Commerce described the variables in its subsidy rate calculation and reiterated that Commerce did not apply an entered value adjustment ("EVA"). *Id.* at 13-14 (citing *Utility Scale Wind Towers From the Socialist Republic of Vietnam: Preliminary Countervailing Duty Determination and Alignment of Final Determination with Final Antidumping Duty Determination*, 84 Fed. Reg. 68,104 (Dep't of Commerce Dec. 13, 2019) and accompanying Preliminary Decision Memorandum at

**PUBLIC VERSION**

13, PR 152; IDM at cmt. 6).  Commerce then found that WTTC's unsupported argument

was "not relevant to the CVD rate calculations because . . . the profit of either CS Wind

Vietnam or CS Wind Korea is not one of the factors that can impact either the subsidy

rate or CVD liability calculations."  *Id.* at 14.  Commerce also explained that the result of

accepting WTTC's argument would have been a higher CVD liability had the

denominator been decreased.  *Id.* at 14-15; *see id.* at 27 (citing Draft Remand Results

at 15-16).[8]

     In addition, Commerce found that there was a lack of evidence to support

WTTC's claim that the "overall reported cost" of the wind towers would have changed

due to a tolling arrangement, let alone the relevance of such change in cost or the

"[[                                    ]]" to the denominator.  *Id.* at 31-32 (citing Pet'rs' Cmts. on

Draft Remand Results at 5).  Commerce explained: "Because neither the numerator nor

the denominator of the subsidy rate calculation includes the reported cost of subject

---

[8] Commerce explained that WTTC's claim, if true, would not benefit CS Wind Vietnam in terms of its CVD liability:

> [I]f CS Wind Korea's [[                                              ]], the denominator in the subsidy rate calculation (*i.e.*, CS Wind Korea's sales value of subject merchandise produced by CS Wind Vietnam) would decrease, and in turn, result in a larger subsidy rate.  Further, because CVD liability is calculated as the overall subsidy rate multiplied by entered value, artificially increasing entered value would result in a larger CVD liability.  Because Commerce denied the [EVA], if we were to accept the petitioners' speculation as fact, the result would be *higher*, not *lower*, CVD liability.  It would be illogical for a respondent to manipulate its CVD rate with its entered value in a manner that would *increase* its duty liability.

*Id.* at 14-15; *see id.* at 29.

**PUBLIC VERSION**

merchandise, the reported costs (including the raw materials) do not affect the subsidy rate calculation." *Id.* at 32 (footnote omitted).

Last, Commerce demonstrated that it considered manipulation in reaching its determination. *Id.* at 15; *see id.* at 5-6. Namely, Commerce stated that WTTC raised manipulation to argue that Commerce should not make an EVA[9] — not to argue that Commerce should not use CS Wind Korea's sales value for wind towers produced by CS Wind Vietnam for the denominator. *Id.* at 5-6 (citing WTTC Case Br. at 25), 15-16. Commerce stated that it considered the manipulation arguments but that, due to its EVA denial, Commerce did not need to "specifically address every piece of evidence of potential manipulation." *Id.* at 15; *see id.* at 16.

Commerce's conclusion that the denominator in the subsidy rate calculation was not affected by potential manipulation is "reasonable and supported by the record as a whole." *Shandong Huarong Gen. Corp.*, 25 CIT at 837, 159 F. Supp. 2d at 718 (citing *Heveafil Sdn. Bhd.*, 25 CIT at 149), *aff'd sub nom. Shandong Huarong Gen. Grp. Corp.*, 60 F. App'x 797; *see* Remand Results at 16. Commerce concluded that in this case the manipulation claims were unfounded:

> Commerce takes manipulation concerns seriously; however, [Commerce] determined that the record evidence did not substantiate the petitioners' claims, that the petitioners failed to adequately explain how some of the alleged facts result in manipulation, and that in some instances the facts alleged by the petitioners as evidence of manipulation of [sic] CVD rate by the respondent would actually have increased the amount of countervailing duties due.

---

[9] Commerce determined not to make an EVA. IDM at 30.

**PUBLIC VERSION**

Remand Results at 16.  In other words, Commerce explained that the claims of potential

manipulation were unsubstantiated and would not "have the potential to affect the

denominator" in the subsidy rate calculation.  *Id.* at 28; *see id.* at 5-16, 24-35.

Moreover, Commerce demonstrated that its CVD methodology was reasonable.  *See id.*

at 28; *see also id.* at 5-16, 24-35; *Wind Tower I*, 46 CIT at __, 569 F. Supp. 3d at 1249.

In addition, Commerce reached its conclusion as to manipulation "regardless of whether

the pieces of information are considered individually or collectively."  Remand Results at

28 (citing *Nexteel Co. v. United States*, 43 CIT __, __, 355 F. Supp. 3d 1336, 1351

(2019)).  As detailed in Commerce's explanation, the evidence on which Commerce

relied is reasonable to support its conclusion that there was no manipulation based on

plaintiff's claims.  *See id.*  Further, Commerce followed the remand instructions to

address potential manipulation.  *See id.*  Accordingly, Commerce's Remand Results as

to potential manipulation comply with the remand order, are supported by substantial

evidence and are in accordance with law.

## II.    Import status of the steel plate in question

### A.    Positions of the parties

Plaintiff argues that Commerce relied on "speculative 'possibilities'" instead of

substantial evidence to support its determination that the steel plate was sourced from

Vietnam.  Pl. Br. at 6 (quoting Remand Results at 19), 8-9 (quoting Remand Results at

**PUBLIC VERSION**

19).[10]  In addition, plaintiff alleges that Commerce's conclusion — that neither CS Wind

Vietnam nor CS Wind Korea would be the importer even if the unaffiliated supplier

imported the steel plate in question — is "sheer conjecture."  *Id.* at 7-8 (citing Remand

Results at 19).  Instead, plaintiff insists that the record does not support Commerce's

statement involving the hypothetical notion that the unaffiliated supplier could have

imported the steel plate.  *Id.* (citing Remand Results at 19; Verification Exs. at VE-15 at

71).[11]  Plaintiff also maintains that Commerce did not address the evidence that the

unaffiliated supplier "does not operate a plate mill in Vietnam."  *Id.* at 8 (citing *Wind

Tower I*, 46 CIT at __, Slip Op. 22-27 at 69-70 (Mar. 24, 2022)).  Relatedly, plaintiff

stresses that the real issue is "where the [steel plate] originated" or was produced based

on the record as a whole, *id.* at 8-9 (citing *Wind Tower I*, 46 CIT at __, Slip Op. 22-27 at

70-71), not whether the steel plate was "sourced from within Vietnam," *id.* (quoting

Remand Results at 20).

---

[10] Plaintiff repeats the argument in its motion that Commerce should apply AFA as related to the Import Duty Exemptions program due to CS Wind Vietnam's provision of "inaccurate and incomplete information."  Pl. Br. at 6-7 (citing WTTC Case Br. at 21; 19 U.S.C. § 1677a(d) (2000)), 9-10 (citing WTTC Case Br. at 21; *see* Pl. Mot. at 15 n.3 (citing WTTC Case Br. at 14-21).  *But see* Remand Results at 36 (noting that the court already sustained Commerce's decision not to apply AFA); Def. Br. at 15 (same).  The court concluded in *Wind Tower I*, that plaintiff's argument was not persuasive.  *See* 46 CIT at __, 569 F. Supp. 3d at 1258-59.

[11] Further, plaintiff claims that "[[

            ]]."  Pl. Br. at 8 (citing Verification Exs. at VE-15 at 71).

**PUBLIC VERSION**

Plaintiff also takes issue with Commerce's hypothetical conclusion as to the duty rate had CS Wind Vietnam imported the steel plate in question.  *See id.* at 9-10 (citing Remand Results at 21).  Plaintiff states that the duty rate determination "is dependent upon the identification of the plate's country of origin, but Commerce failed to base its country-of-origin determination on substantial record evidence."  *Id.* at 9.

In response, the Government argues that Commerce's determination was based on substantial evidence, that Commerce responded to each of the remand instructions and that WTTC "fail[s] to show that Commerce's determination was unreasonable" or that CS Wind Vietnam imported the steel plate in question.  Def. Br. at 9 (citing Remand Results at 16-23, 36-40), 12-13.  Commerce explained that the "central issue is whether CS Wind Vietnam received a benefit for this steel plate from the Import Duty Exemption program."  Remand Results at 37; *see* Def. Br. at 10.  Commerce supported its determination that the steel plate was sourced in Vietnam based on the evidence, "including invoices, packing lists, and examination of CS Wind Vietnam's purchases at verification."  Remand Results at 38 (citing Draft Remand Results at 19-20; Letter from Grunfeld, Desiderio, Lebowitz, Silverman & Klestadt LLP to Sec'y Commerce, re: *CS Wind First Supplemental Questionnaire Response – Remaining Questions: Countervailing Duty Investigation of Utility Scale Wind Towers from Vietnam (C-552-826)* (Nov. 8, 2019) ("First SQR – Remaining Questions") at Ex. SQ2-6a, CR 83-84; First SQR at Ex. SQ2-18 at 18; Verification Exs. at VE-15); *see* Def. Br. at 11-12 (citing Verification Exs. at VE-15 at 68-75; First SQR at Ex. SQ2-18 at 18-19; First SQR –

**PUBLIC VERSION**

Court No. 20-03692                                                                                    Page 24

Remaining Questions at 1 & Ex. SQ2-6a).  Commerce confirmed that CS Wind Vietnam

was required to report purchases of raw materials that are sourced domestically when

"the supplier is from outside of Vietnam."  Remand Results at 19 (citing Verification

Mem. at 16; IQR at Ex. C-3); *see* Def. Br. at 13 (quoting Verification Mem. at 16; IDM at

17 (quoting Verification Mem. at 16)) (citing Remand Results at 18-19).

Commerce also found that the evidence pertaining to the plate mill did not

overcome its conclusion based on the record as a whole.  Remand Results at 38; *see*

Def. Br. at 10-12.  Specifically, even if the unaffiliated Vietnamese supplier imported the

steel plate, CS Wind Vietnam and its parent company would still not be the importer

"liable for import duties."  Remand Results at 19; *see* Def. Br. at 12-13.

Commerce disagreed further with plaintiff that the benefit determination relates to

only the place of production or origin of the steel plate in question.  Remand Results at

19 (citing Letter from Grunfeld, Desiderio, Lebowitz, Silverman & Klestadt LLP to Sec'y

Commerce, re: *CS Wind Rebuttal Brief: Countervailing Duty Investigation on Utility

Scale Wind Towers from Vietnam (C-552-826)* (Apr. 20, 2020) ("CS Wind Rebuttal Br.")

at 17, CR 112, PR 200); Def. Br. at 14-15.  Instead, Commerce determined that neither

CS Wind Vietnam, Remand Results at 17-20 (citing Verification Mem. at 16; IQR at Ex.

C-3), 38-39; *see* Def. Br. at 10 (citing Remand Results at 17-20, 37-40), 12 (quoting

Remand Results at 38), nor CS Wind Korea imported the steel plate in question, *see*

Remand Results at 20, 38-39.  Commerce explained that "the totality of the evidence

supports the finding that the steel plate in question is sourced from within Vietnam, and

Court No. 20-03692                                                                          Page 25

therefore, import duties would not have been applicable to CS Wind Vietnam's purchases of steel plate such that CS Wind Vietnam could not have benefitted from import duty exemptions."  Remand Results at 20; *see* Def. Br. at 15.

With respect to the MFN rate, Commerce found it "unnecessary" to address the MFN status issue because CS Wind Vietnam did not import the steel plate in question. Remand Results at 22; Def. Br. at 16 (citing Remand Results at 39-40).  Still, Commerce described that even if the steel plate had been imported, it "would have been subject to a duty rate of zero, pursuant to MFN status."  Remand Results at 21; Def. Br. at 15-16 (quoting Remand Results at 21).

B.    Analysis

1.    Steel plate documentation

The issue before the court is whether Commerce's conclusion that CS Wind Vietnam did not import the steel plate in question and, therefore, did not receive a benefit under the Import Duty Exemptions program is supported by substantial evidence.  *See Wind Tower I*, 46 CIT at __, 569 F. Supp. 3d at 1259-60; *see also* Remand Results at 37 ("To answer the central question of whether CS Wind Vietnam received a benefit for this steel plate from the Import Duty Exemption program, Commerce needed to determine which inputs CS Wind Vietnam imported, and whether CS Wind Vietnam paid the appropriate corresponding duties on imported inputs.").  In *Wind Tower I*, the court concluded that Commerce failed to "substantiate its conclusion that CS Wind Vietnam did not import the steel plate in light of the evidence and

**PUBLIC VERSION**

Court No. 20-03692                                                                                              Page 26

arguments that detract from Commerce's conclusion that were presented by WTTC."

46 CIT at __, 569 F. Supp. 3d at 1259-60.  On remand, Commerce provided additional

analysis.  *See* Remand Results at 16-20, 22-23, 35-40.  Commerce's conclusion on

remand is supported by substantial evidence.

On remand, Commerce maintained its conclusion that CS Wind Vietnam did not

import the steel plate in question.  *Id.* at 17-18; *see* IDM at 17.  Commerce weighed the

evidence that WTTC presented as to the import status of the steel plate in question and

the nonexistence of a [[                                    ]] plate mill in Vietnam.  Remand Results at 17

(quoting *Wind Tower I*, 46 CIT at __, Slip Op. 22-27 at 56 (quoting IQR at 21)) (citing

WTTC Case Br. at 15).  For instance, Commerce examined further CS Wind Vietnam's

questionnaire response about the source of its raw materials.[12]  *Id.* at 18-20.  After

reviewing the "lists of suppliers of raw materials, invoices, and packing lists," Commerce

found that "CS Wind Vietnam's statement that 'most,' not all, of the raw materials are

exported to Vietnam is accurate."  *Id.* at 18 (citing First SQR – Remaining Questions at

Ex. SQ2-6a; First SQR at Exs. SQ2-18 at 18-19, Ex. SQ2-20 (comparing lines 3948-51,

4002, 4073, 4075, 4104, 4105, 4107-09, 4136-37, 4139-40, 4144-47, 5520, 9826,

10288, 10394 with line 12922)); *see id.* at 18-20 (citing Verification Exs. at VE-15 at 68-

_____

[12] CS Wind Vietnam had stated that CS Wind Korea "supplies all main materials – steel plate, flange, steel plate for door frame and internal mounting items – from outside of Vietnam for the production of the wind towers.  Therefore, most of [sic] raw materials are exported to Vietnam by CS Wind [Korea]."  IQR at 21.

**PUBLIC VERSION**

75) (noting that Commerce considered at verification "purchase orders and invoices"

that aligned with the questionnaire response).

Commerce found that "[r]ecord evidence demonstrates that [[                    ]]

purchased the steel plate from [Vietnamese supplier] [[                    ]] for use by

[[                    ]]." *Id.* at 19; *see id.* at 20, 38-39 (concluding that "the record

evidence demonstrates that CS Wind Vietnam's affiliate purchased the plate in Vietnam

from an unaffiliated party" (citing Draft Remand Results at 19-20; First SQR –

Remaining Questions at Ex. SQ2-6a; First SQR at Ex. SQ2-18 at 18; Verification Exs. at

VE-15)).  Commerce also reiterated that, as CS Wind Vietnam explained, it was still

required to report to the Government of Vietnam raw materials sourced from Vietnam "if

the supplier is from outside of Vietnam."  *Id.* at 18-19 (citing Verification Mem. at 16;

IQR at Ex. C-3).  Commerce stated that CS Wind Vietnam engaged merely in "over-

reporting" to Commerce on Vietnam-sourced materials "for which CS Wind Vietnam did

not receive import duty exemptions."  *Id.* at 19.

With respect to the plate mill, Commerce continued to find based on "the totality

of the evidence" that neither CS Wind Vietnam nor CS Wind Korea imported the steel

plate in question.  *Id.* at 20; *see id.* at 38-39 (footnote omitted); *see also id.* at 40

(maintaining that "CS Wind Vietnam did not receive a benefit" for the steel plate in

question).  Specifically, Commerce relied on a [[                    ]] that showed that

"the steel plate was transported by [[      ]] from [[                ]] to [[

     ]] and thus never left the country."  *Id.* at 19 (citing Verification Exs. at VE-15 at

**PUBLIC VERSION**

71).  Commerce considered the evidence that WTTC presented that "[[

                                                                              ]]," weighed that

evidence and concluded that the steel plate was "not imported by an affiliate of CS Wind

Korea," *id.* at 39 (first citing Pet'rs' Cmts. on Draft Remand Results at 8; and then citing

Verification Exs. at VE-15 at 71); Commerce found that such evidence "does not

preclude possibilities in which steel plate can be sourced from within Vietnam even if

the mill where the plate was produced was located outside Vietnam," *id.* at 19 (citing CS

Wind Rebuttal Br. at 17); *see id.* at 38 (noting the plate mill issue "is not dispositive" as

to the import status of the steel plate).  Commerce addressed plaintiff's hypothetical,

adding that "if [[                        ]] imported the steel plate, neither CS Wind Korea nor

CS Wind Vietnam would be the importer and would not be liable for import duties, if

such duties were applicable, and would not be the beneficiary of any exemptions of

those duties."  *Id.* at 19.

      The court will not "disturb" Commerce's conclusion, as it is "reasonable and

supported by the record as a whole."  *Shandong Huarong Gen. Corp.*, 25 CIT at 837.  It

is irrelevant that Commerce could have drawn another conclusion from the documents

because, as Commerce found, the record overall reflects that CS Wind Vietnam did not

import the steel plate in question.  *See* Remand Results at 17-18 ("[B]ecause CS Wind

Vietnam did not import this steel plate, it did not receive benefits under the Import Duty

Exemption program."), 20 ("[W]e find that the verified documentation showing steel plate

purchase orders and invoices from a Vietnamese supplier outweighs the evidence cited

PUBLIC VERSION

by the petitioners."); *Altx, Inc.*, 370 F.3d at 1116 (quoting *Matsushita Elec. Indus. Co.*,

750 F.2d at 933).

In conclusion, Commerce's Remand Results as to the steel plate in question

comply with the remand order, are reasonable and are supported by substantial

evidence.

### 2.    Salience to the determination of the duty rate listed

In *Wind Tower I*, the court instructed Commerce to explain "the salience, if any,

of the MFN rate to its determination" and the reason that the rate is listed within

Commerce's calculations as to the steel plate in question.  46 CIT at __, 569 F. Supp.

3d at 1260; *see* Calculation Mem. at attach. II, tab "Raw Materials.Rev.ATT2.BPI."

Plaintiff argues that due to the alleged misidentification of the country of origin of the

steel plate in question, Commerce's conclusion as to the salience of the duty rate is "not

based on substantial evidence."  Pl. Br. at 9-10.  The court is unpersuaded by plaintiff's

argument.

Commerce stated on remand that the "MFN rate was not salient to Commerce's

consideration of the origin of the steel plate in the *Final Determination*."  Remand

Results at 20; *see* Remand Results at 39 ("[G]iven that the record evidence shows that

the steel plate was sourced from within Vietnam rather than imported by CS Wind

Vietnam, this point is not relevant.").  In response to the remand instruction, Commerce

also explained that the duty rate included in the table in the final calculation

memorandum was "irrelevant to the calculations" for the steel plate in question but was

**PUBLIC VERSION**

rather a result of CS Wind Vietnam's over-reporting, which is discussed *supra* Section II.B.1.  *Id.* at 22.

In addition, Commerce noted that it "did not consider the MFN rate" in its determination as to the steel plate in question.  *Id.* at 20.  Commerce added that it would have needed to address whether a country is "subject to the MFN rate" only if CS Wind Vietnam had imported the steel plate, which Commerce found that CS Wind Vietnam did not.  *Id.* at 39-40; Def. Br. at 16.  Still, Commerce offered that even under the circumstances that WTTC raises (as to the alleged import of the steel plate in question), no benefit would have been conferred.  Remand Results at 21.  Namely, Commerce explained that "the imported steel plate would have been subject to a duty rate of zero, pursuant to MFN status."  *Id.*  Commerce added that there would be no import duties, and therefore no benefit, whether the steel plate was sourced domestically or imported due to the MFN duty rate for the steel plate from MFN countries.  *Id.*

The court agrees with the Government.  Commerce found that the MFN rate was not salient to its determination because CS Wind Vietnam did not import the steel plate in question.  *See* Remand Results at 39-40; *see also* Def. Br. at 16.  Commerce also explained the reason that the MFN rate appeared in its table despite its irrelevance to the calculation of the benefit as to the steel plate in question.  *See* Remand Results at 22 (citing IQR at 23), 39-40.  Therefore, Commerce did not need to determine further, as plaintiff insists, that the MFN rate applies as to any particular country or conduct further analysis into countries that might not have MFN status as to the steel plate in

**PUBLIC VERSION**

question.  *See* Def. Br. at 16; Pl. Br. at 9.  Accordingly, Commerce's determination not

to consider the MFN rate that appears in Commerce's final calculation memorandum is

supported by substantial evidence and complies with the remand instructions.

### 3.     Importation scenarios in the remand order

The court also instructed Commerce to address the steel plate documentation

and duty rate points by responding to three questions about whether the identity of the

importer of record would impact the eligibility of CS Wind Korea or CS Wind Vietnam to

receive a benefit.  *Wind Tower I*, 46 CIT at __, 569 F. Supp. 3d at 1260.  On remand,

Commerce explained that the "importer of record is the party liable for payment of duties

with respect to any particular entry."  Remand Results at 23; *see* Remand Results at 38

("[T]o receive the benefit under the program, a party has to be an importer of record,

and has to have imported steel plate and paid duties on the imported plate to which the

exemption might apply.").  Commerce added that there is "no record evidence that CS

Wind Vietnam imported the steel plate at issue."  *Id.* at 23; *see id.* at 38-39.

The court concludes that Commerce met its obligation to respond to the remand

instruction pertaining to the scenarios that reflect concerns raised in WTTC's

arguments, *see, e.g.*, Pl. Br. at 7-8: (1) Commerce explained that under the Import Duty

Exemptions program only the importer of record would be liable for CVD duties, *see*

Remand Results at 23; (2) Commerce explained that even if the unaffiliated Vietnamese

supplier imported the steel plate in question, CS Wind Korea and CS Wind Vietnam

would "not be liable for import duties, if such duties were applicable, and would not be

**PUBLIC VERSION**

the beneficiary of any exemptions on those duties", *id.* at 19; and (3) as described *supra*
Section II.B.1, Commerce refuted the argument that CS Wind Vietnam imported the
steel plate in question, *id.* at 17-18, 23; *see also id.* at 19 (finding that the steel plate in
question "never left the country" (citing Verification Exs. at VE-15 at 71)).

In conclusion, Commerce's Remand Results pertaining to the steel plate in
question being sourced from within Vietnam are supported by substantial evidence and
are in compliance with the remand order.

**CONCLUSION**

"To dream the impossible dream . . . ."[13]

\* \* \*

For the foregoing reasons, Commerce's Remand Results are supported by
substantial evidence and comply with the court's instructions in *Wind Tower I*.  The
court sustains the Remand Results.  Judgment will enter accordingly.


/s/      Timothy M. Reif____
Timothy M. Reif, Judge


Dated:      April 27, 2023_____
          New York, New York

---

[13] RICHARD KILEY, MITCH LEIGH (MUSIC) & JOE DARION (LYRICS), *The Impossible Dream
(The Quest)*, *on* MAN OF LA MANCHA (Kapp Records, Inc. 1966) (BOOK BY DALE
WASSERMAN).